IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SHANTA BOWMAN et al.,
        Plaintiffs,

v.                                                                      Civil Action No. 3:16-CV-601-JAG

RESCARE, INC.,
BRALEY & THOMPSON, INC.,
        Defendants.

## OPINION

Between 2013 and 2016, ResCare, Inc., and its subsidiary, Braley & Thompson, Inc. (collectively referred to as "ResCare") relocated, demoted, or terminated a number of its employees—including the plaintiffs—in an ongoing effort to cut costs and remain profitable. The plaintiffs clearly did not like working conditions at ResCare, and they blame all their dissatisfaction on either racial discrimination or unlawful retaliation. The discrimination and retaliation claims form the basis of this suit.[1]

ResCare has moved for summary judgment on all counts of the amended complaint. The plaintiffs' discrimination claims fail either because they do not make out a prima facie showing of actionable race discrimination or because they cannot show that the defendants' legitimate, non-discriminatory reasons for the adverse employment actions are mere pretext. The plaintiffs' retaliation claims likewise fail because they cannot prove that the defendants took any actions against them in response to oppositional conduct.

---

[1] Plaintiff Shanta Bowman has also alleged that ResCare denied her access to leave under the Family and Medical Leave Act. ResCare and Bowman have settled that claim, which the Court will, therefore, dismiss with prejudice.

# I. FACTS

The plaintiffs challenge essentially everything at their workplace as some sort of illegal conduct. They find hostility in the most mundane activities, such as the punctuation of emails. The breadth of their gripes unfortunately requires the Court to delve into the minutiae of daily life at ResCare.

ResCare provides support services such as foster care, mental health skill building ("MHSB") programs, intensive in-home treatment ("IIH"), and department of juvenile justice ("DJJ") programs throughout Virginia. ResCare employed the plaintiffs in these various programs. All of the plaintiffs are African American.

In 2011, ResCare acquired the company that had employed plaintiffs Shanta Bowman, Erin Wilson, and Donald Cowles. After the acquisition, the plaintiffs continued to work for ResCare's MHSB and IIH programs out of their same office on Southlake Boulevard. Over time, ResCare promoted Wilson and Bowman. The Southlake Boulevard lease ended in 2014, and ResCare saved $20,000 per year by moving the Southlake employees to the back portion of its Meadowdale Boulevard office. ResCare's Kids in Focus program already occupied the front part of that office. ResCare had moved African American and Caucasian employees into the back portion of the Meadowdale office following past office closures, and at least one Caucasian employee worked in the space right before the plaintiffs arrived. In their depositions, the plaintiffs described the Meadowdale office as run down, in an unsafe area, lacking adequate interior and exterior lighting, and lacking parking space lines.

All of ResCare's MHSB, IIH, and DJJ program employees at the Meadowdale Office, regardless of race, entered through the back entrance. The entrance went through an employee kitchen area, but was much closer to the employees' work area than the Kids in Focus entrance.

After the move to Meadowdale, ResCare hired Adam Long to work for the DJJ program. Many of the plaintiffs' complaints focus on Long, whom they view as a problem employee. Long, a vison-impaired, Caucasian male, applied to work for ResCare in 2013 but did not get the job. He filed an EEOC charge. To resolve the charge, ResCare and Long reached a settlement agreement to hire him full time at $20 per hour. Long had issues with his job duties at ResCare, and at times the plaintiffs helped complete Long's work. Unhappily, Long's litigious history gave him a sort of tenure with the company, and even plaintiff Bowman, as Long's supervisor, remained wary of potential lawsuits by him.

Also after the move to Meadowdale, ResCare hired Barbara Miles and Kimberly Timmons to work for its MHSB and IIH programs. ResCare also brought Teiana Whitehead from Kids in Focus to help perform administrative duties for the office and support the DJJ program.

In August 2015, ResCare hired painters to paint the Meadowdale office and had the plaintiffs, as well as the Kids in Focus employees, move furniture away from the walls.[2] Erin Wilson (then Erin Timmons) wrote an email to Charles Laslie, her Regional Manager, about the work. She said that "[o]ur office does not seem to function or receive equal treatment, as do the other community-based [ResCare] offices. I find it extremely difficult to believe that 2 female employees, in other offices, would have been required to move an entire office space." (Email chain between Erin Timmons and Charles Laslie, Dk. No. 33-22.) She continued, "Maybe I am wrong, but are staff in other offices moving furniture, cleaning bathrooms, sweeping/vacuuming, clearing cobwebs and dumping trash?" (*Id.*) Wilson also complained about the cleanliness of the office, the interior and exterior lights, and the "crime-ridden" community. She closed the

---

[2] Kids in Focus had an African American manager, Cecelia Smith, and a mix-raced staff.

3

email by saying, "today was confirmation that employment is not equal" at ResCare. (*Id.*) Laslie responded that all offices moved their own furniture (including the Kids in Focus staff), and he apologized that they did not have more strong employees in the office to help. He explained that he tried to get more men to help them and offered future help.

On September 3, 2015, Wilson emailed Laslie and Mary Struzinsk—a member of management above Laslie—complaining that the ResCare staff at Meadowdale were overworked and stressed. Wilson also wrote that Bowman had lost her pregnancy. Struzinsky and Laslie responded separately, asking for a list of employees and their work assignments so that management could look into getting more employees.

The plaintiffs testified to other forms of alleged discrimination that took place over the course of their employment. First, they said that Laslie, their Caucasian manager and a clinician whose approval they required for certain tasks, worked out of a separate office and did not come to Meadowdale as often as needed. They also said that Laslie mentioned a person's race on two occasions while telling a story. Further, they testified that Deborah Hendrix in human resources at times spoke to the plaintiffs in a derogatory tone and used excessive exclamation points or question marks in emails. The plaintiffs do not know if Hendrix treated Caucasian employees this way. Hendrix also asked Bowman to consent to a drug test when she tried to make a worker's compensation claim; ResCare policy required this consent and ResCare had required Long to do the same.

The plaintiffs also testified about pay discrepancies. Timmons said that ResCare delayed reimbursing her mileage due to her race. Whitehead said that ResCare paid her less than Long because of her race. Miles and Timmons claimed that ResCare hired them as part-time

4

employees instead of full-time employees because of their race and to prevent them from receiving full-time benefits.

When ResCare took accounting at the end of 2015, it determined the MHSB and IIH programs at Meadowdale had lost almost $100,000 per year for the second straight year. The plaintiffs earned higher salaries than other ResCare employees in similar roles due to their carryover from their prior employer, and ResCare determined that the Meadowdale office had more staff than needed for its client base. In 2016, ResCare conducted a large-scale restructuring of its unprofitable programs.[3] As a part of this restructuring, Mark Landis, ResCare's Director of Operations, directed Struzinsky to close the MHSB program at Meadowdale. Struzinsky instead attempted to save the Meadowbrook program by developing a reorganization plan that would cut salaries and part-time employees rather than close the programs altogether. On January 25, 2016, Struzinsky sent her proposed plan to Landis. On February 18, 2016, Struzinsky emailed Hendrix to say that Landis had approved the plan, which Struzinsky said would model ResCare's other MHSB program called Creative Family Solutions. Struzinsky said that Long, who worked for the DJJ program and not the MHSB program, would get paid $20 an hour because of his settlement but that no one else would get that pay moving forward.

On March 9, 2016, Bowman complained to Laslie over the phone about racial inequality felt by her and the plaintiffs. He did not address her concerns. Bowman also sent an email the next day complaining about Long. In the email, Bowman asked how to handle Long not working enough hours. She did not mention race. In response to the email, another ResCare employee said that Bowman and Laslie should meet with Long "ASAP" to discuss his hours.

---

[3] ResCare laid off Caucasian and African American employees from a number of MHSB programs throughout Virginia. At the end of the effort, ResCare employed ten African American employees and nine Caucasian employees in those programs.

Wilson testified that she spoke to Laslie in person multiple times about the unequal treatment of ResCare's employees based on race. She said Laslie denied that race had anything to do with her complaints, but she could not provide estimated dates for these conversations.

On March 14, 2016, Laslie and Hendrix announced the reorganization plan to the ResCare employees at Meadowdale. Under the plan, wages would reflect the salaries paid to employees in ResCare's Creative Family Solutions' MHSB programs. Bowman took on the new MHSB supervisor role and Wilson and Cowles stayed on as full-time staff. These full-time staff had their pay cut by approximately 30%.[4] Timmons and Miles had their hours cut to zero until the MHSB programs at Meadowdale added more clients.

The restructuring plan also affected the DJJ program at Meadowdale despite the fact that the program had remained profitable. Struzinsky chose Adam Long to head the DJJ program because he had more full-time experience working with the program than any other employee and because she did not think she could lower Long's hourly wage or his full-time status due to his settlement agreement. ResCare fired Whitehead because she had three disciplinary violations and because Struzinsky determined that the office did not need administrative support. Even Bowman had rated Whitehead's performance as "below expectations."

After the reorganization meeting, a few other events occurred. First, Laslie instructed the plaintiffs to transfer some of their cases to competitors since the office would no longer have a clinical technician. Next, the plaintiffs complained through human resources that ResCare had discriminated against them based on their race, but HR did not immediately respond to those complaints. Finally, the plaintiffs all quit within a few months of the reorganization's

---

[4] No employee other than Cowles actually ever had their pay cut, however, because ResCare did not go through with the pay cuts before the plaintiffs quit. Cowles had one or two paychecks with a pay decrease but received his prior pay in the next paycheck.

6

announcement. After Bowman quit, ResCare offered Bowman's job to Wilson, who declined. The defendants offered to re-hire Whitehead following other employees' departures, but she also declined.

## II. DISCUSSION[5]

The plaintiffs bring discrimination claims under Title VII and 42 U.S.C. § 1981 as well as a Title VII retaliation claim. Bowman brings an FMLA claim.

### A. Discrimination Claims

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of race or color. 42 U.S.C. § 2000e–2(a)(1).

To make out a prima facie case for disparate treatment in the workplace under either Title VII or § 1981, a plaintiff must show that "(1) that she is a member of a protected class; (2) that her job performance was satisfactory; (3) that she was subjected to an adverse employment action by her employer; and (4) that similarly situated employees outside her protected class received more favorable treatment." *Peary v. Goss*, 365 F. Supp. 2d 713, 722 (E.D. Va. 2005), *aff'd*, 180 F. App'x 476 (4th Cir. 2006).[6] Not every aspect of an employee's work experience constitutes a term, condition, or benefit that can give rise to an adverse employment action. *Id.*

---

[5] Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[6] *See also Gairola v. Commonwealth of Va. Dept. of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985). The exact elements for employment discrimination claims vary slightly based on the facts of the case. To make a prima facie case for discriminatory discharge, a plaintiff must show

7

A defendant can rebut the plaintiff's prima facie showing of discrimination by demonstrating non-discriminatory reasons for the difference in treatment. *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). Such reasons include cost-saving measures and the retention of experienced staff. *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992).[7] In weighing a defendant's explanation, it is not the Court's place to second guess the wisdom of business decisions. *Duffy v. Belk, Inc.*, 477 F. App'x 91, 95 (4th Cir. 2012).[8]

If the defendant gives non-discriminatory reasons for its actions, the plaintiff can still prevail by showing that the defendant's reasons are mere pretext for the discrimination. *Id.* To win, "[t]he employee . . . need not demonstrate that the prohibited characteristic was the sole motivating factor . . . so long as it was a motivating factor." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (internal citation omitted).

In this case, the plaintiffs' discrimination claims stem from two general categories of actions by the defendants: those related to the plaintiffs' workplace treatment and those related to their terminations or demotions through the reorganization plan.[9] The undisputed facts fail to make a prima facie case of workplace treatment discrimination because the plaintiffs cannot

---

that she "(1) is a member of a protected class; (2) was performing his or her work satisfactorily at the time of discharge; (3) was actually discharged; and (4) was treated more harshly than others outside the class or has produced other evidence that would support a reasonable inference of discrimination." *Kator v. Doctors Band*, 133 F.3d 915 (4th Cir. 1998).

[7] *Kess v. Mun. Employees Credit Union of Baltimore, Inc.*, 319 F. Supp. 2d 637, 645 (D. Md. 2004).

[8] *See also Clay Printing Co.*, 955 F.2d at 946 (stating in an ADEA context that "[the defendant] was free to make its business decisions, including reorganizing its work force, so long as it did not violate the ADEA. It is not the purpose of the EEOC nor the function of this court to second guess the wisdom of business decisions").

[9] In their opposition to the defendants' motion for summary judgment, the plaintiffs highlight the following distinct discrimination claims stemming from the reorganization: (1) disparate treatment under Title VII based on the demotions and terminations, (2) demotion in pay under § 1981 or Title VII, (3) discriminatory discharge, (4) failure to promote, and (5) discriminatory reorganization.

show that ResCare treated similarly situated employees outside of the protected class more favorably. For the discrimination claims tied to the plaintiffs' terminations or demotions, the Court need not determine whether the undisputed facts make a prima facie showing of discrimination because the undisputed facts fail to show that the defendants acted out of racial bias as opposed to legitimate, non-discriminatory motives.

### i. *Work-Related Treatment Claims*[10]

The plaintiffs' complaints related to their treatment at work fail to make a prima facie showing of discrimination. First, the undisputed facts show that employees of protected and unprotected races (1) worked in the back office space at the Meadowdale office and used the back entrance, (2) moved furniture in advance of painting, and (3) took a drug test before submitting a worker's compensation claim. The plaintiffs have failed to make a prima facie showing of discrimination on these claims. *Bryant*, 288 F.3d at 132–33. Next, the plaintiffs lack any evidence to show that the defendants treated African American employees differently than Caucasian employees based on (1) how long ResCare took to reimburse travel expenses, (2) how frequently Laslie visited ResCare offices, or (3) Hendrix's use of excessive punctuation. These claims also fail.

The claims about Whitehead's pay and hiring African American employees as part-time versus full-time also fail because the plaintiffs cannot compare themselves to Long as a similarly situated employee. Long worked for a profitable ResCare program and had a settlement agreement protecting his employment. The plaintiffs, complaining of pay disparities between themselves and a Caucasian employee, cannot be similarly situated in "all relevant respects"

---

[10] The plaintiffs failed to address these claims in their opposition to the motion for summary judgment, but the Court addresses the claims due to the emphasis placed on them in the complaint.

9

where that employee has a settlement agreement specifically protecting his wages and hours. *See, e.g., Bateman v. Am. Airlines, Inc.*, 614 F. Supp. 2d 660, 674 (E.D. Va. 2009) (finding employees to be "similarly situated" where the job functions of the two flight attendants required them to fly and the company permitted a non-protected flight attendant not to fly but denied the accommodation to a flight attendant in a protected class). These claims fail.

Finally, Laslie's mention of a person's race in two instances fails to make a prima facie claim. As stated above, not every aspect of an employee's employment may give rise to an employment discrimination claim, and this allegation does not support an independent claim for discrimination.

### ii. *Terminations or Demotions via the Reorganization Plan*

For the plaintiffs' discriminatory termination and demotion claims, the Court need not determine whether the plaintiffs make out a prima facie case because the facts fail to show that the defendants' many legitimate, non-discriminatory reasons for their actions are mere pretext.

ResCare initiated the reorganization because the MHSB and IIH programs had lost nearly $100,000 per year for two straight years. The plaintiffs call the reorganization a sham for a number of reasons: (1) the defendants had hired new employees in the year before the reorganization (in response to the plaintiffs' requests for more help), (2) upper management did not let the plaintiffs know about the losses ahead of time, and (3) Laslie directed the plaintiffs to cut certain clients after the reorganization, and (4) HR delayed in responding to the plaintiff's discrimination complaints after announcing the reorganization. These reasons, however, do not show that the six-figure losses were pretext. At best, the plaintiffs have merely nit-picked the way that the defendants went about the reorganization or second-guessed the defendants' business judgment about how to reverse financial losses. *See Clay Printing Co.*, 955 F.2d at 946.

The undisputed facts also show that the defendants planned the reorganization over a period of months—well in advance of announcing the plan to employees—and do not show that the defendants acted out of racial bias as opposed to financial need.

The plaintiffs also fail to show pretext for ResCare's reasons for keeping Long hired as a full-time employee, at his old pay rate. ResCare's legitimate reasons for giving Adam Long the full-time DJJ position without a pay decrease include (1) he had the most experience with the DJJ program, (2) he had a settlement agreement protecting his hours and his rate of pay, and (3) the DJJ program had remained profitable. Even if Long was not a good employee, this fact does not show pretext. Bowman herself feared litigation with Long for changing the terms of employment under his settlement agreement. Moreover, the DJJ program had remained profitable, unlike the MHSB and IIH programs for which the plaintiffs worked. Long also had more experience with the DJJ program than any of the plaintiffs, and plaintiff Whitehead, who worked with Long in the DJJ program before the reorganization, had lackluster performance reviews even from Bowman. The plaintiffs offer no evidence that defendants acted out of racial bias by demoting or firing the plaintiffs but keeping Long at his same salary and hours.

Overall, the plaintiffs' evidence also fails to show that Landis and Struzinsky, who initiated the reorganization, held any racial bias whatsoever. Ultimately, the company-wide reorganization addressed actual financial losses, involved the termination of both African Americans and Caucasians, and resulted in a majority of African American employees working in MHSB programs. Simply put, a reasonable juror could not find that the defendants' business reasons for their actions were mere pretext, and the plaintiffs' claims fail.

## B. *Title VII Retaliation Claims*

To prove retaliation under Title VII, a plaintiff "must show '(i) that [she] engaged in protected activity, (ii) that [her employer] took adverse action against [her], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity.'" *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 217 (4th Cir. 2016) (quoting *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)). An employee need not explicitly state in one communication that he or she believes that the employer has discriminated against them, but the Court "must examine the course of a plaintiff's conduct through a panoramic lens, viewing the individual scenes in their broader context and judging the picture as a whole." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015). If a plaintiff makes a *prima facie* case of retaliation, the burden then shifts to the defendant to show a non-discriminatory reason for the actions. *Guessous*, 828 F.3d at 216. The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons for the actions were pretext. *Id.*

The plaintiffs here fail to make a prima facie showing of retaliation because (1) most of the plaintiffs' actions do not constitute protected conduct, and (2) the only actions that could serve as protected conduct lack a causal link between the conduct and the demotions or terminations. And, as noted above, the plaintiffs also fail to show that ResCare's legitimate cost cutting in response to massive financial losses was pretext.

Most of the plaintiffs' actions are not complaints about racial discrimination and do not constitute protected activity. Wilson's email in August 2015 saying that "employment is not equal" did not mention race at all and, if anything, focused on the plaintiffs' gender. Next, Wilson's September 2015 email asking for more staff does not mention race. Bowman's email

on March 10, 2016, also does not mention race. These emails, even in light of all of the facts, do not suggest that the plaintiffs complained about racial discrimination. Even if these emails did constitute protected activity, the plaintiffs cannot show a causal link between the conduct and the terminations and demotions. First, Wilson sent her emails months before the defendants began to develop the reorganization and this gap breaks any causal connection. *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006). Second, ResCare developed and approved the reorganization long before Bowman sent her email in March 2016, so her email did not cause the demotions or terminations.

The plaintiffs' only evidence showing potentially protected activity lacks a causal connection to the alleged retaliatory conduct. First, Wilson provided vague deposition testimony saying she had conversations with Laslie about discrimination, but she does not provide the dates of those conversations. Without these dates, the plaintiffs cannot show the defendants' actions occurred in retaliation to these complaints. *See Guessous*, 828 F.3d at 217 (stating that a plaintiff must show that retaliation was "the real reason for the [adverse employment action]") (internal citation omitted). Next, even if Bowman made discrimination complaints to Laslie by phone on March 9, 2016, ResCare had initiated and even approved the reorganization plan well before that call. These facts do not set out a prima facie case of retaliation. Nor do they show that ResCare acted out of retaliation as opposed to the legitimate goal of curbing massive financial losses. In sum, the plaintiffs' retaliation claims fail at summary judgment.

### III. CONCLUSION

The Court grants the motion for summary judgment on the plaintiffs' discrimination and retaliation claims because even if the plaintiffs can make a prima facie showing of discrimination

13

or retaliation, they cannot show by a preponderance of the evidence that the legitimate reasons of saving money or keeping more experienced employees are mere pretext.

The Court issued a corresponding Order dated May 1, 2017. (Dk. No. 66.)

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: October 19, 2017
Richmond, VA

/s/ John A. Gibney, Jr.
United States District Judge